UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

| | | |
|---|---|---|
| CURTIS W. JOHNSON and CAROL Z. JOHNSON, husband and wife, | ) ) ) | Case No. 14-36088 |
| Plaintiffs - Appellants, | ) ) | Case No. 1:11-cv-042-S-DVB |
| v. | ) ) | U. S. District Court for the District of Idaho |
| BANK OF AMERICA, N.A.; BAC HOME LOANS SERVICING, LP; BANK OF AMERICA CORPORATION; CAPITAL ONE, N.A.; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC; GREENPOINT MORTGAGE FUNDING, INC., SUN VALLEY TITLE CO.; JOHN DOES 1 – 100; and CORPORATIONS A - Z, inclusive, and all persons claiming any legal or equitable right, title, estate, lien, or interest in the following parcel of real property in Blaine County, Idaho, described as  Lot 2 of GOLDEN EAGLE RANCH SUBDIVISION, BLAINE COUNTY, IDAHO,  as shown on the official plat thereof, recorded January 2, 1997 as Instrument no. 397902, and corrected by Surveyor's Affidavit recorded January 8, 1997, as Instrument No. 398090, records of Blaine County, Idaho. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants - Appellees. | ) ) | |

**APPELLANTS' OPENING BRIEF**

---

Brent T. Robinson, Esq.

Robinson & Tribe
615 H Street
PO Box 396
Rupert, ID   83350-0396
(208) 436-4717
btr@idlawfirm.com

Attorneys for Plaintiffs – Appellants

Kelly Greene McConnell, Esq.

Givens Pursley LLP
601 West Bannock Street
PO Box 2720
Boise, ID   83701
(208) 388-1200
kgm@givenspursley.com

Attorneys for Defendants – Appellees

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................... iii

STATUTES & RULES ...................................................................... iv

OTHER CITES  .............................................................................. v

STATEMENT OF THE CASE ............................................................. 1

JURISDICTIONAL STATEMENT ...................................................... 2

STANDARD OF REVIEW ................................................................. 2

STATEMENT OF ISSUES ON APPEAL ............................................. 3

STATEMENT OF THE FACTS .......................................................... 4

ARGUMENT ................................................................................... 7

    I. WHETHER THE COURT ERRED WHEN IT GRANTED
      SUMMARY JUDGMENT WITH RESPECT TO FINDING
      THAT TILA DID NOT APPLY ................................................... 7

      A. THE PLAINTIFFS DELIVERED A WRITTEN
         NOTICE TO BACHLS, THE LENDER, ON
         JANUARY 5, 2011 WHICH WAS WITHIN THREE
         YEARS OF THEIR LOAN'S CONSUMMATION.
         THIS IS ALL THE JOHNSONS WERE REQUIRED
         TO DO IN ORDER TO EXERCISE THEIR RIGHT
         TO RESCIND UNDER 15 USC 1635 ........................................... 7

i

B. TILA OBLIGATES LENDERS TO, AT A MINIMUM, RESPOND TO THE NOTICE OF RESCISSION WITHIN 20 DAYS. FAILURE TO RESPOND EQUATES ACQUIESCENCE AND PROHIBITS LENDER FROM RAISING ANY DEFENSES AFTER THAT DATE ................................................................. 11

II. WHETHER THE COURT ERRED WHEN IT DID NOT CONSIDER A BREACH OF CONTRACT IN RENDERING ITS DECISION ULTIMATELY RESOLVING THE CASE ........... 16

III. WHETHER THE COURT ERRED WHEN IT FOUND THAT THE ORDER ISSUED SUBSEQUENT TO THE FILING OF A CHAPTER 11 BANKRUPTCY WAS VOID ........... 19

CONCLUSION ................................................. 21

STATEMENT OF RELATED CASES ............................. 23

CORPORATE DISCLOSURE STATEMENT ................................. 24

CERTIFICATE OF COMPLIANCE ................................. 25

CERTIFICATE OF SERVICE ........................................ 26

# TABLE OF AUTHORITIES

*Arnold v. W.D.L. Invs., Inc.,* 703 F.2d 848, 850 (5th Cir.1983) ....................... 15

*Bank of America, NA v. Peterson*, 746 F.3d 357 (8th Cir. 2014) ............ 13 (fn.7)

*Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 412 (1998) .......................................9

*Belini v. Washington Mutual Bank*, 412 F.3d 17 (1st Cir. 2005) ........... 14 (fn.8)

*Causey v. US Bank N.A*, 464 Fed. App. 634, 635 (9th Cir. 2011) (unreported) 15

*Curley v. City of N. Las Vegas,* 772 F.3rd 629, 631 (9th Cir. 2014) ...................3

*Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119,
1125 (9th Cir. 2014)...............................................................................................3

*Gerasta v. Hibernia Nat. Bank*, 575 F.2d 580, 583 (5th Cir. 1978).................. 15

*Gerth v. American Mortg. Express Fin.,* 2011 WL 1004693, *2
(S.D. Cal. March 18, 2011) ............................................................................... 20

*Jesinoski v. Countrywide,* 135 S.Ct. 790 (2015) ............................... 7, 10, 14, 15

*McKenna v. First Horizon Home Loan Corp.*,
475 F.3d 418, 421 (1st Cir. 2007)...................................................................... 13

*Mijo v. Avco Fin. Servs. Of Haw, Inc.,* 1991 WL 126660, at
1 (9th Cir. 1991) (unpublished) ........................................................................ 14

*In re Mwangi*, 764 F.3d 1168, 1173 (9th Cir. 2014) ............................................2

*Murray v. Bammer (In re Bammer),* 131 F. 3d 788, 792 (9th Cir. 1997)............2

Table of Authorities (continued)

*Phillips v. World Publ'g Co*., 822 F. Supp 2d 1114, 1122
(W.D. Wash. 2011) ........................................................................ 20

*Ramadan v. Chase Manhattan Corp.,* 156 F.3d 499, 502 (3rd Circuit 1998)......8

*Rowland v. Novus Fin. Corp.,* 949 F.Supp. 1447, 1455 (D.Haw.1996) ........... 15

*Smith v. Fid. Consumer Disc. Co.,* 898 F.2d 896, 903 (3rd Cir. 1990) ............ 14

*Smith v. Am. Fin. Sys., Inc.*, 737 F.2d 1549, 1552 (11th Cir.1984) ................. 15

*Williams v. Homestake Mortg. Co*., 968 F.2d 1137, 1140 (11th Cir. 1992).........7

*Yamamoto v. Bank of N.Y.*, 329 F.3d 1167, 1172 (9th Cir. 2003).................... 15

## STATUTES & RULES

12 CFR 226.15(a)(2) and Regulation Z ................................................9

12 CFR & 226.23 (a)(3) .................................................................9

12 CFR 226.23 (a)(3),
Reg Z Staff comments  23(b) Notice of Right to Rescind...................9

12 C.F.R. § 226.23 (b)(1) ...............................................................9

12 CFR 226.23(d)(2) ................................................................ 13, 16

12 CFR pt. 226, Supp. I para. 23(d)(2) .......................................... 13

12 CFR 226.23(d)(3)................................................................ 15, 16

24 CFR & 3500.2(a)................................................................ 5 (fn.2)

11 USC § 326(a)(1)................................................................... 20

11 USC § 362(a)(1)................................................................... 20

15 USC § 1601(a) .......................................................................8

15 USC § 1611 ...........................................................................8

15 USC 1635 ..................................................................... 7, 9, 13, 14

15 USC § 1635(a) .......................................................... 8, 10, 11, 14

15 USC § 1635(b) .......................................... 7, 10, 12, 13, 14, 15, 16

15 USC § 1635(f) .......................................................................9

v

Statutes and Rules (continued)

15 USC § 1635(g) ............................................................. 14

15 USC §1640........................................................... 14, 16

15 USC § 1640(a) ......................................................... 8, 14

28 U.S.C. § 1291 .............................................................2

Fed Reg. Vol. 75, No. 185 p. 58628 ................................... 6 (fn.3), 13

Fed.R.Civ.P. 57(a) ...........................................................2

## OTHER CITES

Truth-in-Lending: Judicial Modification of the Right of Rescission,
1974 Duke L.J. 1227, 1234 (1974) ......................................................7

Ralph C. Clontz, Jr., 2 *Truth in Lending Manual* § 10.03[4], at 10-4 (2000) .. 15

## STATEMENT OF THE CASE

This is an appeal from the District Court of Idaho from two Memorandum Decisions and Orders by The Honorable Lee Benson: (1) The District Court's granting summary judgment in favor of the defendants and ruling that the Truth in Lending Act (hereafter "TILA") and the Real Estate Settlement Procedure Act (hereafter" RESPA"), did not apply to this case; and (2) the ruling of the District Court that the automatic stay triggered by the filing of a Chapter 11 bankruptcy by the plaintiffs/appellants did not void that courts subsequent order granting summary judgment to the defendants-appellees.

The plaintiffs-appellants filed their Third Amended Complaint on November 16, 2011. Subsequent thereto, the Court dismissed all but three counts. The District Court granted defendants' motion to dismiss (See Exc. of Rcd. Pgs. 593-596), leaving only three matters before that court. Those matters were:

1. Whether TILA applied;

2. Whether RESPA applied; and,

3. Whether there existed a breach of contract in this matter.

On September 16, 2014, the District Court granted summary judgment in favor of the defendants-appellees and indicated that TILA and RESPA did not apply. However, the District Court entered that order subsequent to the filing of a Chapter 11 bankruptcy by the plaintiffs-appellants on September 10, 2014. The

defendant-appellants objected on the grounds that the automatic stay triggered by their bankruptcy should have made that later ruling void. However, the District Court ruled that the bankruptcy did not void its order granting summary judgment and it remained in full force and effect. Thereafter, the plaintiffs-appellants filed their Notice of Appeal in this case.

## JURISDICTIONAL STATEMENT

The Ninth Circuit Court of Appeals has jurisdiction under 28 U.S.C. § 1291.

## STANDARD OF REVIEW

The District Court's decision below is based upon factual findings, as well as legal findings. Since the case decision is based upon mixed questions of law and fact, the Court of Appeals may review those decisions de novo. *Murray v. Bammer (In re Bammer),* 131 F. 3d 788, 792 (9th Cir. 1997). "A mixed question of law and fact occurs when the historical facts are established; the rule of law is undisputed, i.e., 'just cause or excuse'; and the issue is whether the facts satisfy the legal rule." *Id.* "Mixed questions presumptively are reviewed by us de novo because they require consideration of legal concepts and the exercise of judgment about the values that animate legal principles." *Id.* Additionally, whither or not the Bankruptcy Code's automatic stay have been violated is reviewed de novo. *In re Mwangi*, 764 F.3d 1168, 1173 (9th Cir. 2014)

A District Court's granting of summary judgment is reviewed de novo. *Curley v. City of N. Las Vegas,* 772 F. 3d 629, 631 (9th Cir. 2014). Summary judgment is appropriate when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 57(a). Furthermore, the court must view the evidence in a light that is most favorable to the nonmoving party. *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014). "A fact is "material" only if it might affect the outcome of the case, and a dispute is "genuine" only if a reasonable trier of fact could resolve the issue in the non-movant's favor." *Id*. If the court may reasonably draw divergent from the undisputed facts, then summary judgment is improper. *Id*.

## STATEMENT OF ISSUES ON APPEAL

The plaintiffs-appellants are withdrawing its appeal of the District Court dismissal all counts in the Third Amended Complaint except the claims of breach of contract, the application of TILA, and the application of RESPA. The plaintiffs-appellants are also withdrawing their claims relating to the application of RESPA. Finally, the plaintiffs-appellants are withdrawing its appeal of the District Court's refusal to grant a preliminary injunction.

The issues on appeal are:

I. WHETHER THE COURT ERRED WHEN IT GRANTED
SUMMARY JUDGMENT WITH RESPECT TO FINDING
THAT TILA DID NOT APPLY.

II. WHETHER THE COURT ERRED WHEN IT DID NOT
CONSIDER A BREACH OF CONTRACT IN RENDERING
ITS DECISION ULTIMATELY RESOLVING THE CASE.

III. WHETHER THE COURT ERRED WHEN IT FOUND
THAT THE ORDER ISSUED SUBSEQUENT TO THE
FILING OF A CHAPTER 11 BANKRUPTCY WAS VOID

## STATEMENT OF THE FACTS

In November 2005, the Johnsons refinanced the debt against their home in the amount of $1,963,500.00 (the "Loan") and executed an Adjustable Rate Mortgage promissory note and deed of trust in favor of Greenpoint Mortgage Funding, and identifying on both documents Greenpoint as the Lender. (the "Note" and "Deed of Trust"). Greenpoint, the original lender sold the Loan to North Fork in December 2005. (*See* Exc. of Rcd. Pg. 665.) Capital One is now asserting its ownership of the note since the Note was endorsed in blank. With the financial collapse of 2008, the Plaintiffs contacted BAC Home Loans Servicing, hereafter BACHLS, the then servicer of the note, concerning a loan modification. On December 30, 2009, documents entitled "Loan Modification Agreement" (the "Modification")[1] and an "Offer to Modify", both drafted by BACHLS and received

---

[1] While the document is titled "Loan Modification" it was in fact a new loan by BACHLS to the Plaintiffs. It states that it "amends and supplements" the note and

by the Plaintiffs on January 6, 2010, (Exc. of Rcd. Pgs. 658-659) in these documents, BACHLS identified itself not as the servicer but as the 'Lender." [2] (Exc. of Rcd. Pg. 659.)    The Modification speaks for itself and states that BACHLS would loan the Johnsons $2,076,673.22, which represented the original loan balance of $1,963,500.00 plus $113,173.50, which represented the past due interest and escrow payments from June through December, 2009 totaling $89,792.38, (Exc. of Rcd. Pg. 659)*; and* new monies for January and February, 2010 interest payments and escrow payments totaling $23,381.12, (Exc. of Rcd. Pg. 659.) The "modification" resulted in a new Lender, BACHLS in place of Greenpoint, a new interest rate fixed at 6 3/8% in place of the variable rate and a new principal amount of the loan of $2,076,673.22 in place of the $1,963,500.00. BACHLS threatened the Johnsons by stating that this document must be returned by January 14, 2010, or else BACHLS would commence other collection actions. (Exc. of Rcd. Pg. 659.)  This was after BACHLS had refused all monies that would have brought the loan current through January 2010.  (Exc. of Rcd. Pg. 658.)

---

Deed of Trust dated November 2, 2005.  This it does since the original lender, GPMF, had sold the note on December 5, 2005.  While using the same negotiable paper language as the November 2, 2005 note which was endorsed in blank, the Note payable to BACHLS has never been endorsed or transferred.

[2]    Lender is defined in 24 CFR & 3500.2 (a) as "lender means, generally, the secured creditor named in the debt obligation. . .  Blacks Law Dictionary defines Lender as "He from whom a thing is borrowed"  Websters defines lender as someone who lends money or gives credit in business matters

In addition to the two-page "Modification Agreement" a two-page "Offer to Modify" was sent to the Plaintiffs with the "Modification Agreement" and stated that if the Loan was an ARM loan, which the Johnsons' was, then the payment amount would be subject to change as called for in the original Note. (Exc. of Rcd. Pg. 659.)  Neither material disclosures nor Notice of the Right to Rescind were given to the Plaintiff by BACHLS as required under TILA.[3]  (Exc. of Rcd. Pgs. 659-660.)   In November 2010, the Johnsons contacted BACHLS inquiring about the interest rate adjustment of the Loan as called for in the original loan.  BACHLS stated that the computer program would adjust the Loan's interest rate automatically. When the December, 2010, mortgage interest statement arrived, the Johnsons noted that the interest rate had not been adjusted pursuant to the original Note and again called BACHLS, who then told them that the interest rate would not adjust because of the Modification.

On January 4, 2011, the Johnsons exercised their Federal statutory right under TILA to rescind the Modification by sending a Notice of Rescission to BACHLS, the Lender, at 400 Country Wide Way, Simi Valley, CA   93065, the address given on the "Loan Modification Agreement".  (Exc. of Rcd. Pg. 660.)  15

---

[3] The Federal Reserve System stated in its summary of Major Proposed Changes as follows:   "The amendments would also ensure that consumers receive TILA disclosures for modifications to key loan terms, by revising the rules regarding when a modification to an existing closed-end mortgage loan results in a new transaction.  Fed Reg Vol. 75, No. 185 Friday, September 24, 2010

USC § 1635(b) mandates that upon receiving the debtor's rescission notice, the creditor must, within 20 days, return all money paid by the debtor and must void the security interest.  15 USC § 1635(b).  Neither BACHLS nor any of the Defendants have responded to the Notice of Rescission as required by 15 USC § 1635(b).  (Exc. of Rcd. Pg. 660.)   BACHLS has not complied with any of the requirements under 15 USC § 1635. Under § 1635(b), however, all the consumer needs do is notify the creditor of his intent to rescind. The agreement is then automatic.  *Jesinoski v. Countrywide,* 135 S.Ct. 790 (2015).  Thus, rescission under § 1635 "place[s] the consumer in a much stronger bargaining position than he enjoys under the traditional rules of rescission." Note, *Truth-in-Lending: Judicial Modification of the Right of Rescission*, 1974 Duke L.J. 1227, 1234 (1974). Furthermore, because rescission is such a painless remedy under the statute (placing all burdens on the creditor), it acts as an important enforcement tool, insuring creditor compliance with TILA's disclosure requirements. *Williams v. Homestake Mortg. Co*., 968 F.2d 1137, 1140 (11th Cir. 1992).

## ARGUMENT

I. WHETHER THE COURT ERRED WHEN IT GRANTED SUMMARY JUDGMENT WITH RESPECT TO FINDING THAT TILA DID NOT APPLY.

A.  THE PLAINTIFFS DELIVERED A WRITTEN NOTICE TO BACHLS, THE LENDER, ON JANUARY 5, 2011 WHICH WAS WITHIN THREE YEARS OF THEIR LOAN'S CONSUMMATION. THIS IS ALL THE JOHNSONS WERE REQUIRED TO DO IN

ORDER TO EXERCISE THEIR RIGHT TO RESCIND UNDER 15 USC 1635.

TILA's purpose is, "to assure a meaningful disclosure of credit terms so the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit." 15 USC § 1601(a).   To accomplish this purpose, TILA requires disclosure of credit terms in a form that is understandable to the consumer.  Thus, Congress enacted TILA to guard against the danger of unscrupulous lenders taking advantage of consumers through fraudulent or other confusing practices.  *Ramadan v. Chase Manhattan Corp.,* 156 F.3d 499, 502 (3rd Circuit 1998).  Remedies for TILA violations include actual and statutory damages. When creditors transgress this rule, they are subject to both criminal penalties for willful and knowing violations [15 USC § 1611], and to debtors' claims for damages [*id.* § 1640(a)].

Under TILA, if a loan is secured by a debtor's primary residence, (Exc. of Rcd. Pg. 661)*,* "the obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms... whichever is later." 15 USC § 1635(a). Further, "[t]he creditor shall clearly and conspicuously disclose, in accordance with regulations of the Board, to any obligor in a transaction subject to this section the rights of the obligor under this section." *Id*. Notice must be provided "on a separate document that identifies the transaction

and... clearly and conspicuously discloses" the debtor's rights. 12 C.F.R. § 226.23 (b)(1). A creditor's failure to comply with these provisions extends the debtor's right to rescind for up to three years following the transaction. 15 USC § 1635(f). *See also* 12 CFR & 226.23 (a)(3).    The failure of BACHLS to furnish material disclosures or the notices of Right to Rescind triggers the Johnsons' statutory right to rescind the transaction for up to three years under 15 USC § 1635.    *Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 412 (1998). *See* 12 CFR 226.23 (a)(3), Reg Z Staff comments  23(b) Notice of Right to Rescind.

*Regulation Z and 226.15(a)(2)* prescribes the method to rescind: To exercise the right to rescind, the consumer shall notify the creditor of the rescission by mail, telegram, or other means of written communication. Notice is considered given when mailed, or when filed for telegraphic transmission, or, if sent by other means, when delivered to the creditor's designated place of business.[4]   The notice need not give any reason for Rescission.  The Plaintiffs sent a Notice of Rescission to BACHLS on January 4, 2011 VIA FEDEX and it was received by BACHLS on January 5, 2011.  (Exc. of Rcd. Pg. 660.)

The Johnsons' Rescission of the Modification became effective upon receipt of the Notice by BACHLS on January 5, 2011.    On Janaury13, 2015,

---

[4] Since the Notice was sent by FEDEX, under the statute the effective date of the Notice of Rescission is effective upon receipt of the Notice which in this case was January 5, 2011.

Justice Scalia writing for a unanimous Supreme Court in *Jesinoski v. Countrywide Home Loans, Inc.*, 135 S. Ct. 790, 792 (2015), stated:

> "Section 1635(a) explains in unequivocal terms how the right to rescind is to be exercised: It provides that a borrower "shall have the right to rescind . . . *by notifying the creditor, in accordance with regulations of the Board, of his intention to do so*" (emphasis added). The language leaves no doubt that rescission is **effected** when the borrower notifies the creditor of his intention to rescind. It follows that, so long as the borrower notifies within three years after the transaction is consummated, his rescission is timely. The statute does not also require him to sue within three years.

He clarified further:

> **"The clear import of §1635(a) is that a borrower need only provide written notice to a lender in order to exercise his right to rescind**. To the extent §1635(b) alters the traditional process for unwinding such a unilaterally rescinded transaction, this is simply a case in which statutory law modifies common-law practice."  (Emphasis added)

*Id.* at 793.

In unequivocal language the Court states that all that is required to effect rescission is to give notice to the lender (creditor).  In this case, the Plaintiffs sent a notice of rescission to the lender, BACHLS, within three (3) years of the consummation of the transaction which occurred on January 6, 2010.  Therefore, the Rescission was effective upon receipt of the Notice of Rescission on January 5, 2011.

The relevant facts in *Jesinoski* are that the Jesinoskis mailed a Notice of Rescission to BACHLS on February 23, 2010, the last day of the three (3) year

period under Section 1635. BACHLS responded to the Notice of Rescission by refusing to acknowledge the validity of the Notice.[5] The District Court summarily dismissed this fact and said whether the Notice of Rescission is disputed or not, it is effective upon receipt of the Notice of Rescission. The Supreme Court stated: "Respondents argue, however, that if the parties dispute the adequacy of the disclosures—and thus the continued availability of the right to rescind—then written notice *does not* suffice. Section 1635(a) nowhere suggests a distinction between disputed and undisputed rescissions, much less that a lawsuit would be required for the latter."

Therefore, rescission of this transaction between BACHLS and Plaintiffs was rescinded upon receipt of the Notice of Rescission on January 5, 2011. While, BACHLS now claims there is a dispute as to the Rescission, the Supreme Court merely states even if it is disputed or not, it is effective upon receipt of the Notice by the lender BACHLS on January 5, 2011. Therefore, TILA does apply and the lower court erred when it ruled that TILA did not apply.

B. TILA OBLIGATES LENDERS TO, AT A MINIMUM, RESPOND TO THE NOTICE OF RESCISSION WITHIN 20 DAYS. FAILURE TO RESPOND EQUATES ACQUIESCENCE AND PROHIBITS LENDER FROM RAISING ANY DEFENSES AFTER THAT DATE.

---

[5] In the instant case BACHLS et al did not respond within 20 days.

TILA works to collaterally estop *both* lenders and borrowers who fail to act within established statutory time frames.  Borrowers must exercise their right to rescind within three (3) years of consummation of their loan or forever waive that right.  Lenders must respond to a notice of rescission within twenty days of receipt of a borrower's Notice of Rescission.  Receipt of the Notice of Recession triggers the lender's obligation to respond.

15 USC § 1635(b) states: (b) **Return of money or property following rescission**

> When an obligor exercises his right to rescind under subsection (a) of this section, he is not liable for any finance or other charge, and any security interest given by the obligor, including any such interest arising by operation of law, becomes void upon such a rescission. Within 20 days after receipt of a notice of rescission, the creditor **shall** return to the obligor any money or property given as earnest money, down payment, or otherwise, and **shall** take any action necessary or appropriate to reflect the termination of any security interest created under the transaction. If the creditor has delivered any property to the obligor, the obligor may retain possession of it. Upon the performance of the creditor's obligations under this section, the obligor shall tender the property to the creditor, except that if return of the property in kind would be impracticable or inequitable, the obligor shall tender its reasonable value. Tender shall be made at the location of the property or at the residence of the obligor, at the option of the obligor. If the creditor does not take possession of the property within 20 days after tender by the obligor, ownership of the property vests in the obligor without obligation on his part to pay for it.

"The 20-day period for the creditor's action refers to the time within which the creditor must begin the process.  It does not require all necessary steps to have been completed within that time, but the creditor is responsible for seeing the

process through to completion."  12 CFR pt. 226, Supp. I para. 23(d)(2) BACHLS et al did nothing.  (The District Court held said that defendants did not have to respond within twenty days as long as they responded sometime. *See* Exc. of Rcd. Pgs. 841-886.)  BACHLS received the Johnsons' rescission notice, but did not comply with 1635 (b) within twenty days of receipt of the notice.  (Exc. of Rcd. Pg. 660.)  During TILA's twenty-day response period, "the creditor may comply with the rescission request, resist rescission entirely[6],[7] or agree to rescission while seeking equitable modifications." *McKenna*, 475 F.3d at 422.  "Finally some creditors do not respond to the notice of rescission, requiring consumers to go to court to enforce their rights."  Fed Reg. Vol. 75, No. 185 p. 58628   None of the defendants have responded to the Notice of Rescission.  (Exc. of Rcd. Pg. 660.) BACHLS chose simply to ignore the mandate of *15 USC § 1635(b)* and failed to respond or take any action whatsoever to comply with *15 USC § 1635* within the twenty days as prescribed by 12 CFR 226.23(d)(2) which implements 15 USC § 1635(b). (Exc. of Rcd. Pg. 660.) Thus, § 1635(b) places certain requirements

---

[6] BACHLS in its Brief to the US Supreme Court in the Jesinoski case on page 30 stated:  "Unless the lender is willing to operate with a perpetual cloud on its title, in the form of some possible lawsuit at some point in the future the lender's only option is to file a declaratory-judgment suit immediately upon receiving a rescission notice, even if that notice is facially meritless.

[7] There is nothing to prevent BACHLS from taking immediate steps to resolve any disputes to title, including by seeking a court ruling on the validity of the consumer's rescission claim.  Creditors routinely file such actions in both state and federal court. *Bank of America, NA v. Peterson*, 746 F.3d 357 (8th Cir. 2014).

upon a creditor: upon receiving a debtor's valid notice of rescission, the creditor must, within twenty days, return all money paid by the debtor and must void the security interest.[3]

[8]BACHLS' failure to comply with 1635(b), means the Johnsons also have a statutory right to move for damages and attorney's fees under *15 USC § 1640(a)*.   A lender's failure to honor rescission gives rise to a cause of action for damages under TILA, a plaintiff who has rescinded need only bring suit to enforce the rescission within one year after rescinding, because TILA establishes a one-year limitation period for damages actions. *15 U.S.C. § 1640(a). Jesinoski*, supra, further states: "Section 1635(g) makes clear that a court may not only award rescission and thereby relieve the borrower of his financial obligation to the lender, but may also grant any of the remedies available under § 1640 (including statutory damages). It has no bearing upon whether and how borrower-rescission under § 1635(a) may occur."   Should the creditor not take these steps within twenty days, then the creditor has generally violated a "requirement" of § 1635 and can be held liable for damages under section 1640. *See, e.g., Mijo v. Avco Fin. Servs. of Haw. Inc.,* 1991 WL 126660, at 1 (9th Cir. July 1, 1991) (unpublished); *Smith v.*

---

[8] The creditor must respond to a Notice of Rescission even if they believe the NOTICE TO BE INCORRECT.   "Washington Mutual does not contest the correctness of this analysis. It argues, however, that the Belinis' notice of rescission did not require any response because it failed to state a claim and so was invalid. This argument has no force." *Belini v. Washington Mutual Ban*k 412 F.3d 17

*Fid. Consumer Disc. Co.,* 898 F.2d 896, 903 (3d Cir.1990); *Smith v. Am. Fin. Sys.,*

*Inc.,* 737 F.2d 1549, 1552 (11th Cir.1984); *Arnold v. W.D.L. Invs., Inc.,* 703 F.2d

848, 850 (5th Cir.1983); *Gerasta,* 575 F.2d at 584; *Rowland v. Novus Fin. Corp.,*

949 F.Supp. 1447, 1455 (D.Haw.1996); *see also* Ralph C. Clontz, Jr., 2 *Truth in*

*Lending Manual* § 10.03[4], at 10-4 (2000).

      Even before *Jesinoski,* the Ninth Circuit had addressed the failure of

BACHLS and other creditors (Lenders) to comply with 15 USC § 1635(b) within

twenty days of receiving a Notice of Rescission.  In *Causey v. US Bank N.A*, 464

Fed. App. 634, 635 (9th Cir. 2011) (unreported) a case in which the Lender had not

responded to the Notice of Rescission within the 20 days, the Court said:

> If BNY (the lender) had acquiesced in Tampon's (a co-plaintiff) notice of rescission, then the transaction would have been rescinded automatically, thereby causing the security interest to become void and triggering the sequence of events laid out in subsections (d)(2) and (d)(3) of 12 CFR 226.23 But **in a case where the creditor acquiesces in the consumer's notice of rescission or fails to respond within the 20-day response period, rescission is accomplished automatically**.' See Id. Here the undisputed facts show that the plaintiff timely mailed his rescission notice, and the defendant failed to dispute it within 20 days—thus accomplishing rescission automatically and triggering the default sequence under the regulations. (Emphasis added)

*Id.* citing *Yamamoto v. Bank of N.Y.*, 329 F.3d 1167, 1172 (9th Cir. 2003).  Even

under the less stringent standards of cases before *Jesinoski,* if the Lender did not

respond within twenty days of the receipt of the notice the Notice of Rescission

was held to be effective.  This meant that the rescission of the Modification was

automatic and that the default sequences under (d)(2) and (d)(3) of 12 CFR 226.23 were triggered:

> (2) **Within 20 calendar days** after receipt of a notice of rescission, the creditor **shall** return any money or property that has been given to anyone in connection with the transaction and shall take any action necessary to reflect the termination of the security interest.  (Emphasis added)

> (3) If the creditor has delivered any money or property, the consumer may retain possession until the creditor has met its obligation under paragraph (d)(2) of this section. When the creditor has complied with that paragraph, the consumer shall tender the money or property to the creditor or, where the latter would be impracticable or inequitable, tender its reasonable value BACHLS chose to not comply with 1635 (b) and 12 CFR 226.23(d)(2) and (3) within 20 days after receipt of the Notice of Rescission.

BACHLS' failure to respond to the Notice of Rescission within the twenty days triggered the default sequence under 12 CFR 226.23 (d)(2) and (3) and the right to damages and attorney's fees under 15 USC § 1640.   The Johnsons brought suit for enforcement of the rescission and for damages within one year of BACHLS' failing to respond to the rescission notice and complying with 15 USC § 1635(b).   By sending a notice of rescission, the obligor becomes obliged to tender any property he received from the lender "upon the performance of the creditor's obligations. 15 USC 1635(b).   As a matter of law, the Modification is rescinded and the Defendants must now pay damages, attorney fees and costs.

### II. WHETHER THE COURT ERRED WHEN IT DID NOT CONSIDER A BREACH OF CONTRACT IN RENDERING ITS DECISION ULTIMATELY RESOLVING THE CASE.

In this particular case, it was the decision of the lower court that breach of contract was also resolved by the granting of summary judgment. It did not, however, outright address the issues contained in the breach of contract. It is acknowledged that part of breach of contract claim related to TILA. However, the breach of contract involved more than ITLA. The Third Amended Complaint and Demand for Jury Trial, Docket No. 60, Exc. of Rcd. Pgs. 67-68, starting with paragraph 233, after the first sentence, states as follows:

> "233. . . . If the Court determines that such Alleged Modification is still in effect, the Defendants are in breach of contract for failing to adjust the interest rate as set forth above.
>
> 234. The Attached 'Important Message About Your Loan' from BAC which accompanied the Alleged Modification states that the modified monthly payment is, 'subject to change . . . if you have a step rate or adjustable rate loan. '
>
> 235. The Alleged Modification does not state that it is eliminating the adjustable rate established in the Loan. In fact, it states that ,'Except as otherwise specifically provided in this Agreement, the Note and Security Instrument will remain unchanged. . . .' and it does not specifically provide for the elimination of the adjustable rate established in the Promissory Note.
>
> 236. Paragraph 4(F) of the Note states that the, 'Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the telephone number of a person who will answer any questions I may have regarding the notice.'

237. Defendants have failed and refused to deliver such notices to Plaintiffs in December, 2010, and June, 2011 in breach of the contract.

238. In November, 2010, Plaintiffs called the telephone number on their monthly billing statement from Bank of America to inquire about their rate adjustment. In violation of Paragraph 4(f), the person they spoke with could not answer their questions and told them that they would be contacted later; however, they were never contacted.

239. Attached hereto as Exhibit R is a true and correct copy of correspondence from Capital One, N.A. ('Capital One') indicating a telephone number as called for in Paragraph 4(f). When Plaintiffs called that number on April 7, 2011, the person who answered did not understand what they were talking about, thought the debt was credit card debt and then transferred them to Rachael Selzer, account specialist. Ms. Selzer told Plaintiffs that Capital One stopped servicing all non-commercial loans in March, 2009.

240. Attached hereto as Exhibit S is a true and correct copy of the envelope addressed to Capital One at the address indicated in its correspondence to Plaintiffs in which Plaintiffs sent correspondence seeking information about their Loan. Such correspondence was returned to Plaintiffs as 'non-deliverable as addressed/unable to forward.'

241. As a result of the Defendants' breach of contract, Plaintiffs have been forced to spend money to hire an attorney to resolve this matter and have been damaged in an amount to be proven at trial, but not less than $10,000.00."

In essence, these paragraphs make clear that the plaintiffs are seeking a determination of the effect the modification has on the initial note. Namely, does the modification only change the interest rate for a period of one year and thereafter returns to the initial adjustable rate, or does the modified rate apply for a

longer period of time?  The District Court did not address this issue and it remains unresolved.  Despite this fact, the District Court viewed the case as resolved and asked that the Clerk close the case. See Docket Report No. 154, Exc. of Rcd. Pg. 6.

### III. WHETHER THE COURT ERRED WHEN IT FOUND THAT THE ORDER ISSUED SUBSEQUENT TO THE FILING OF A CHAPTER 11 BANKRUPTCY WAS VOID

The Johnsons filed bankruptcy on September 10, 2014.  See Exc. of Rcd. Pgs. 888-892.  Afterwards, the Court entered its Memorandum Decision indicating that TILA and RESPA did not apply.  With respect to such, it is important to note that the District Court based its ruling upon the fact that since the plaintiffs-appellants brought the motion for summary judgment the action by was not an action against the plaintiffs-appellants.  However, that ruling seems to be incorrect because the defendants sought their own summary judgment and when the District Court granted summary judgment in favor of the defendants, it did in fact make a ruling which was against the plaintiffs-appellants and, therefore, should not have occurred.

In the discussion by the District Court, it stated:

"The court acknowledges and agrees, generally, with plaintiffs' assertion that the Bankruptcy Code 'directs that all judicial actions to recover on a claim against the debtor are stayed' upon the debtor's filing. (Pls.' Mem. In Supp. At 2.)  However, as defendants point out in their opposition, numerous courts have also concluded that a debtor cannot employ the automatic stay in bankruptcy in an offensive posture.  (Defs.' Mem.In Opp'n at 3 & n.5 (listing numerous United States Circuit Court

and District Court decisions).)  In other words, the plain language of 11 U.S.C. § 362(a)(1) provides that the filing of a bankruptcy petition only initiates a stay with respect to actions or proceedings *against* a debtor, not actions or proceedings pursued *by* a debtor against another party.  See Phillips v. World Publ'g Co., 822 F. Supp 2d 1114, 1122 (W.D. Wash. 2011) ('A bankruptcy filing automatically stays any judicial . . . action or proceeding against the debtor, but not actions or proceedings brought by the debtor.'); see, e.g., Gerth v. American Mortg. Express Fin., 2011 WL 1004693, *2 (S.D. Cal. March 18, 2011) ('The automatic stay does not apply to offensive actions brought by a debtor and does not prohibit a defendant in an action brought by a plaintiff/debtor from defending itself in that action.' (citations and quotation marks omitted) ).

In this case, the only claims that remained to be decided by the court's September 16, 2014 Order were plaintiffs' claims for alleged violations of the Truth in Lending Act (TILA) and the Real Estate Settlement Procedures Act (RESPA).  Both the TILA and RESPA claims were brought *by* the plaintiffs *against* the defendants.  In fact, throughout the lengthy history of this litigation, the defendants have never asserted any counterclaims against plaintiffs.  Accordingly, because neither of the claims decided in the court's September 16, 2014 Order were 'against the debtors' (the plaintiffs in this proceeding), the court concludes—based on the plain language of Bankruptcy Code section 326(a)(1) and the legal authority cited herein—that the September 16, 2014 Order granting summary judgment in favor of defendants is not void."

Exc. of Rcd. Pgs. 936-944.

What the lower court failed to analyze was that the seeking of such by defendants was an action against plaintiffs and, therefore, the Memorandum Decision and Order Denying Plaintiffs' Motion to Void Order Granting Summary

Judgment or, in the Alternative, to Reconsider Order (Exc. of Rcd. Pgs. 935-940) was in error.

## **CONCLUSION**

First, that the Court should rule that TILA does apply to this case, a timely, by the plaintiff-appellants, rescission occurred, and that none of the defendants-appellees responded to said rescission. Consequently, the defendants-appellees cannot now raise that issue and, based upon recent case law, this Court should rule that TILA prevents the defendants-appellees from being able to enforce the modification and that the entire modification agreement is of no force and effect. Even if this Court were to rule otherwise, it still would have to find that TILA does apply to this case.

Second, plaintiffs-appellants ask the Court to rule that in fact there is still a breach of contract issue pending that has not been resolved and remand the case to resolve that issue.

Third, this Court should rule that the District Court's decision granting summary judgment was a ruling against the plaintiff-appellants and accordingly violated the automatic stay. Thus, that ruling is of no force and effect, because it was void.

RESPECTFULLY SUBMITTED this 28th day of April, 2015.

ROBINSON & TRIBE

By:/s/ Brent T. Robinson
    Brent T. Robinson
    Attorneys for Appellants

## <u>STATEMENT OF RELATED CASES</u>

Pursuant to Ninth Circuit Rule 28-2.6, there are no related cases pending in the Ninth Circuit Court.

DATED this 28th day of April, 2015.

ROBINSON & TRIBE

By: <u>/s/ Brent T. Robinson</u>
Brent T. Robinson

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, Appellant states that he is not a publicly-held corporation, does not issue stock and does not have a parent corporation. Appellant is a Debtor of a Chapter 7 Bankruptcy case.

DATED this 28th day of April, 2015.

ROBINSON & TRIBE

By: /s/ Brent T. Robinson
Brent T. Robinson

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that this brief complies with FRAP Rule 32(7)(B)(i), including the Corporate Disclosure Statement, Certificate of Compliance and Certificate of Service.

DATED this 28th day of April, 2015.

ROBINSON & TRIBE

By: /s/ Brent T. Robinson
Brent T. Robinson

<u>CERTIFICATE OF MAILING</u>

I HEREBY CERTIFY that on the 28th day of April, 2015, the within and foregoing *Appellants' Opening Brief* was electronically through the United States Court of Appeals CM/ECF filing system, and upon such filing the following CM/ECF registered participants in this case were served by electronic means as more fully reflected on the Notice of Electronic Filing, to wit:

- Amber N. Dina
  amberdina@givenspursley.com,tammimason@givenspursley.com
- Robert Korb , III
  bkorb@cox-internet.com
- Kelly Greene McConnell
  litigation@givenspursley.com,sheneise@givenspursley.com,tammimason@givenspursley.com
- Matthew James McGee
  mjm@moffatt.com,tmh@moffatt.com,ccb@moffatt.com
- Christine M Neuharth
  cneuharth@reedsmith.com
- David S Reidy
  dreidy@reedsmith.com
- Brent Taylor Robinson
  btr@idlawfirm.com,cb@idlawfirm.com
- Michael O Roe
  mor@moffatt.com,moffattthomas@hotmail.com,ecf@moffatt.com,tmh@moffatt.com,cro@moffatt.com
- Benjamin W Worst
  benworst@cox.net

I FURTHER CERTIFY that a true and correct copy of the within and foregoing instrument was served upon the following non-registered CM/ECF participant by depositing the same in the United States mail with first-class postage prepaid, enclosed in an envelope addressed to :

Mr. & Mrs. Curtis Johnson
130 Golden Eagle Drive South
Hailey, ID   83333

_____
Brent T. Robinson